UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DOMINIQUE L. JACKSON, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 14-0192 (ABJ) |
| UNITED STATES DEPARTMENT OF JUSTICE, *et al.*, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

This case involves two requests for records that pro se plaintiff Dominique Jackson submitted to the Department of Justice pursuant to the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"). Pending before the Court is defendants' Renewed Motion for Summary Judgment [Dkt. # 54] ("Defs.' Mot."), to which plaintiff did not respond. Upon consideration of defendants' motion, the supporting declaration, and the statement of undisputed material facts, the Court finds that there are no genuine issues of material fact, and defendants are entitled to judgment as a matter of law. Accordingly, it will grant summary judgment in favor of the defendants.

## FACTUAL AND PROCEDURAL BACKGROUND

**I.  Plaintiff's FOIA Requests**

**A.  The First FOIA Request**

On May 24, 2013, plaintiff submitted a FOIA request to the Criminal Division of the Department of Justice seeking a "copy of the Title III interception of wire, oral, and electronic communication approval letters order applications and all other documents that are a part of the

electronic surveillance" of two specific phone numbers listed on the request. Ex. B-2 to Compl. [Dkt. # 1-5] ("First FOIA Request").

On July 29, 2013, the Criminal Division responded by letter advising that any responsive records were exempt from disclosure pursuant to FOIA Exemption 3 because they were exempted from release by another federal statute: Title III of the Omnibus Crime Control and Safe Streets Act, 18 U.S.C. §§ 2510–20 ("Title III"). Second Declaration of Peter C. Sprung [Dkt. # 54-2] ("Decl.") ¶ 7; Ex. B to Decl., citing 5 U.S.C. § 552(b)(3). The letter advised plaintiff of his right to appeal the decision to the Department's Office of Information Policy ("OIP"), Ex. B to Decl., which he did on August 28, 2013. Decl. ¶ 8; Ex. C to Decl.

On December 30, 2013, OIP affirmed the decision to withhold the records under FOIA Exemption 3 and further advised that the records were also except from release pursuant to the Privacy Act. Decl. ¶¶ 8–9; Ex. D to Decl.

On February 10, 2014, plaintiff filed this lawsuit. Compl. [Dkt. # 1].[1]

B.  **The Second FOIA Request**

On April 9, 2014, plaintiff submitted a second FOIA request to the Criminal Division seeking "all files and recordings relating to the activities of" the plaintiff and a specified telephone number ending in 7751, "including but not limited to all Cell Site Location Information [CSLI], call detail records, pen register trap and trace data, Physical surveillance, GPS tracking, search warrants for" a residence specified in the request, and including "all orders, applications, affidavits, and Data[]." Decl. ¶ 28; Ex. E to Decl. [Dkt. # 54-7] ("Second FOIA Request").

---

1  Plaintiff's complaint was dated January 18, 2014 and was entered on the Court's docket on February 10, 2014. *See* Compl.

On September 19, 2014, the Criminal Division sent plaintiff a letter that stated that records responsive to the cell site location information request would be exempt from disclosure pursuant to FOIA Exemption 3, and that his request for documents related to his prosecution – such as the transcripts of the wire intercepts themselves, as opposed to the memoranda seeking Title III authority – had been routed to the Executive Office of United States Attorneys ("EOUSA") because he was prosecuted by a local United States Attorney's Office and not the Department of Justice. Decl. ¶ 29; Ex. F to Decl.

Plaintiff appealed the response, which OIP denied as untimely, and the Criminal Division conducted a search for records it possessed responsive to the Second FOIA Request. Decl. ¶¶ 31–33; Exs. G & H to Decl.

## II. Defendants' First Motion for Summary Judgment and Plaintiff's Amended Complaint

On August 19, 2014, defendants filed a motion for summary judgment as to plaintiff's original complaint. Mot. for Summ. J. [Dkt. # 12]. The Court granted plaintiff a number of extensions of time to respond to the motion because he was trying to obtain transcripts of his criminal trial that he considered relevant to his response, and on June 11, 2015, it stayed the case at his request so he could request to have audio recordings of the trial transcribed. *See* Minute Order of Nov. 28, 2017 (setting forth procedural history of plaintiff's extension and stay requests).

On April 19, 2017, after plaintiff filed a status report advising that his conviction had been upheld on appeal, the Court lifted the stay of this case and ordered him to respond to the motion by May 17, 2017, warning him of the consequences if he failed to do so. *See id.*; Order [Dkt. # 33]. Plaintiff was granted a number of further extensions but did not respond to the motion. *See*

Minute Order of Nov. 28, 2017. On September 8, 2017, the Court granted defendants' motion for summary judgment on the merits. Order [Dkt. # 35].

On December 4, 2017, plaintiff filed a motion for relief from judgment raising various procedural and evidentiary matters, Pl.'s Mot. for Relief from Summ. J. [Dkt. # 40], and a motion for leave to file an amended complaint to add his Second FOIA Request. Pl.'s Mot. for Leave to File Amendment and/or Supplement Pleadings [Dkt. # 41]. On July 9, 2018, defendants responded, stating they did not oppose plaintiff's motions but maintained that the amended complaint should be limited to records that may be in the Criminal Division's possession, and not controlled by the EOUSA, which handles the records of U.S. Attorneys. Defs.' Response to Pl.'s Mots. [Dkt. # 45].

On July 11, 2018, the Court granted plaintiff's motions but limited the scope of the amended complaint "only to the existing defendants in this case, the U.S. Department of Justice's Criminal Division and the U.S. Department of Justice's Office of Information Policy." *See* Minute Order of July 11, 2018 ("Any other claims plaintiff may have against separate defendants must be filed in a new case against them."). So the order granting summary judgment was vacated and the amended complaint became the operative document in this case.

The amended complaint alleged that defendants failed to properly respond to plaintiff's FOIA requests. Am. Compl. [Dkt. # 47] ¶¶ 59–67, 75–81. It also alleged that portions of intercepted communications had entered into the public domain because they had been admitted

into evidence at his trial. *See* Am. Compl. ¶¶ 2–58; Ex. A (search warrant affidavit), Ex. B (trial transcripts), and Ex. C (call transcripts) to Am. Compl. [Dkt. # 47-1].[2]

### III. The Search for Responsive Records

#### A. The First FOIA Request Search

After plaintiff filed his first complaint, the Criminal Division conducted a search for records responsive to the First FOIA Request. Decl. ¶ 11. It searched two locations: (1) a database in the Division's Office of Enforcement Operations ("OEO") used to track requests from federal prosecutors for permission to apply for court authorization to surreptitiously intercept conversations of person allegedly involved in criminal activity under Title III ("the Title III request tracking system"); and (2) archived files and emails of Division employees maintained by the Division's IT department ("Enterprise Vault"). Decl. ¶¶ 11–12, 17.

The Title III request tracking system is the Criminal Division's information management system for tracking Title III applications submitted by all federal prosecutors for internal Department review by the OEO's Electronic Surveillance Unit ("ESU"). Decl. ¶¶ 13–16. The system, which stores information from 1983 to the present, contains data on the date of a Title III request; the type of interception requested; the phone number, if a phone is involved; the name of the requesting prosecutor; the investigative agency that will handle the interceptions; and the date the request was approved or rejected. Decl. ¶ 16. It also contains uploaded request documents, such as prosecutors' applications, law enforcement agent affidavits, proposed court orders, and

---

2   The amended complaint also alleged that the Department "unlawfully intercepted wire, oral, and electronic communications without prior authorization," Am. Compl. at 15, and used evidence from those intercepts in his trial, Am. Compl. ¶¶ 84–85, but the Western District of Pennsylvania, not the Criminal Division, prosecuted plaintiff's criminal case. *See* Decl. ¶ 20.

5

action memoranda. *Id.* The Division searched this system for plaintiff's name and the two telephone numbers identified in the First FOIA Request. *See id.*

The Enterprise Vault is the file and email archiving program that the Criminal Division uses to archive email from its Microsoft Outlook email application. Decl. ¶ 17. The program automatically archives emails more than 30 days old, and the Enterprise Vault contains emails dating back to 2009. *Id.* The Division conferred with the ESU attorney responsible for reviewing Title III requests by the prosecutors in plaintiff's case, determined the name of the prosecutors and the time period during which the ESU attorney and the prosecutors communicated about the requests, and searched the ESU attorney's email account for the names of the prosecutors for the relevant time period. Decl. ¶ 19. It found that the U.S. Attorney's Office for the Western District of Pennsylvania had submitted several requests to the Criminal Division for permission to seek Title III orders with respect to the two telephone numbers identified in the First FOIA Request. Decl. ¶ 20.

Defendants submitted a Vaughn Index describing the records it located as a result of the search and indicating they were withheld pursuant to FOIA Exemption 3, 5, 6, and 7(C). *See* Vaughn Index [Dkt. # 12-7] ("First Vaughn Index").

B. **The Second FOIA Request Search**

After plaintiff filed his amended complaint, the Division searched the Title III request tracking system for requests regarding the phone number ending in 7751 and found no entries. Decl. ¶ 33. Peter Sprung, a trial attorney in the Criminal Division responsible for FOIA matters involving the Division, Decl. ¶¶ 1–3, contacted the prosecutor in plaintiff's case to ask whether any requests were made for the number or whether any other requests referred to it. Decl. ¶ 33. He determined that the prosecutor had not submitted a Title III request for the 7751 number, but

6

one had been submitted that referenced the number.  *Id.*  The record for that request had been located in the search for the First FOIA Request and appeared in the Vaughn Index.  *Id.*, citing First Vaughn Index at 30 (bates nos. CRM-594-685).  Mr. Sprung also confirmed that no other component of the Criminal Division than the OEO had been involved in plaintiff's prosecution in any manner.  *Id.*

The Division did not conduct another search of the Enterprise Vault in response to the Second FOIA Request because it determined that it had already retrieved all of the emails relating to the record that referenced the 7751 telephone number.  Decl. ¶ 33, n.1.

Defendants submitted a Vaughn Index identifying the responsive documents located through its search and indicating that they were withheld pursuant to FOIA Exemption 3, 5, 6, and 7(C).  Decl. ¶ 35; Ex. I to Decl. [Dkt. # 54-11] ("Second Vaughn Index").

## IV.  Defendants' Renewed Motion for Summary Judgment

On December 10, 2018, defendants filed a renewed motion for summary judgment as to plaintiff's amended complaint.  *See* Defs.' Mot.  On December 13, 2018, the Court issued an order advising plaintiff to respond to defendants' motion by January 11, 2019 or risk the entry of judgment against him, Order [Dkt. # 55], but plaintiff never responded to the motion.

## LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In a FOIA action, the Court may award summary judgment solely on the information provided in affidavits or declarations that "describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the

7

record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *see also Vaughn v. Rosen*, 484 F.2d 820, 826 (D.C. Cir. 1973), cert. denied, 415 U.S. 977 (1974). Such affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981). Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears "logical" or "plausible." *Wolf v. CIA*, 473 F.3d 370, 374–75 (D.C. Cir. 2007) (citations omitted).

The D.C. Circuit has held that district courts cannot invoke the local rule to grant a motion for summary judgment as conceded without considering the issues on the merits. *Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 505 (D.C. Cir. 2016) ("Under the Federal Rules of Civil Procedure, a motion for summary judgment cannot be 'conceded' for want of opposition."). Accordingly, the Court will consider defendants' motion on the merits, accepting those factual assertions supported by declarations or other competent evidence.

## ANALYSIS

The Court will examine the adequacy of the searches conducted to locate documents responsive to plaintiff's FOIA requests, then address the grounds asserted for withholding them.

### I. Defendants Conducted Adequate Searches for Responsive Records

An agency's search for documents in response to a FOIA request is adequate if it is "beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011), quoting *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999); *see also Oglesby v.*

*U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990); *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983).

To demonstrate that it has performed an adequate search, an agency must submit a reasonably detailed affidavit describing the search. *Oglesby*, 920 F.2d at 68. An affidavit is "reasonably detailed" if it "set[s] forth the search terms and the type of search performed, and aver[s] that all files likely to contain responsive materials (if such records exist) were searched." *Id.*; *see also Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 91 (D.D.C. 2009).

Agency affidavits attesting to a reasonable search "are accorded a presumption of good faith," *SafeCard Servs.*, 926 F.2d at 1200, that can be rebutted "with evidence that the agency's search was not made in good faith," *Trans Union LLC v. FTC*, 141 F. Supp. 2d 62, 69 (D.D.C. 2001), or when a review of the record raises substantial doubt about the adequacy of the search effort. *Valencia-Lucena*, 180 F.3d at 326; *see also Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990) ("If, however, the record leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper.").

An agency's declarations "need not 'set forth with meticulous documentation the details of an epic search for the requested records,'" *Defs. of Wildlife*, 623 F. Supp. 2d at 91, quoting *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982), but they should "describe what records were searched, by whom, and through what processes." *Id.*, quoting *Steinberg v. Dep't of Justice*, 23 F.3d 548, 552 (D.C. Cir. 1994). Conclusory assertions about the agency's thoroughness are not sufficient. *See Morley v. CIA*, 508 F.3d 1108, 1121–22 (D.C. Cir. 2007).

Here, defendants submitted a declaration of Peter Sprung, a trial attorney in the Criminal Division responsible for FOIA matters involving the Division. Decl. ¶¶ 1–3. The declaration describes the searches the Criminal Division conducted to locate documents responsive to

plaintiff's FOIA requests related to prosecutors' requests to seek court orders under Title III. *See* Decl. ¶¶ 11–20, 33–34.

The declarant determined that the OEO was the only component in the Division that had any involvement in plaintiff's prosecution, and spoke to the ESU attorney within the component who reviewed the Title III request submitted by the prosecutors handling plaintiff's case. Decl. ¶¶ 19, 33. The Division searched the Department's internal system that tracks all Title III authorization requests by federal prosecutors from across the country for plaintiff's name and the three phone numbers identified in his FOIA requests. Decl. ¶¶ 12–16, 33. And its Information Technology Management staff, which is responsible for searching the Enterprise Vault in response to FOIA requests, searched the email account of the ESU attorney who reviewed the requests for the names of the prosecuting attorneys during the relevant time when the prosecutors were communicating with the EUS attorney about their requests. Decl. ¶¶ 18–19. So the evidence reveals that defendants searched the two systems within the Division that would have records about Title III requests related to plaintiff and the phone numbers he identified in his FOIA requests. *See* Decl. ¶¶ 12–19, 21, 34.

Defendants' declaration set forth the search terms and type of search performed, identified which systems were searched, and averred that all files likely to contain responsive materials were searched. *See Oglesby*, 920 F.2d at 68; *White v. U.S. Dep't of Justice*, 840 F.Supp.2d 83, 89 (D.D.C. 2012). Comparing the documents plaintiff requested to the systems searched and the terms used to conduct the search, and absent any countervailing evidence suggesting that a genuine dispute of material fact exists as to the adequacy of the search, *Morley*, 508 F.3d at 1116, the Court holds that defendants conducted an adequate search.

## II. Defendants Properly Withheld Responsive Documents

### A. Defendants Properly Determined that the Responsive Documents were Exempt from Disclosure under the Privacy Act

The Privacy Act, which governs the acquisition, maintenance, use, and disclosure of information concerning individuals by federal agencies, *Jones v. Exec. Office of President*, 167 F. Supp. 2d 10, 13 (D.D.C. 2001), exempts "any system of records within the agency" maintained by the agency or component that "performs as its principal function any activity pertaining to the enforcement of criminal laws." 5 U.S.C. § 552a(j)(2). The Criminal Division's principal function is enforcing federal criminal laws, Decl. ¶ 37, and its responsibilities include approving federal prosecutors' requests to apply for Title III orders, which authorize the interception of wire, oral, or electronic communications in the course of criminal investigations. *See* 18 U.S.C. § 2516. The records plaintiff seeks are maintained in the Division's Title III request tracking system and email archives. *See* Decl. ¶¶ 12–19, 21, 34. Accordingly, the records responsive to plaintiff's FOIA requests are exempt from disclosure under the Privacy Act.

### B. Defendants Properly Withheld Responsive Documents Pursuant to the Applicable FOIA Exemptions

While the records at issue are exempt from disclosure under the Privacy Act, the Criminal Division separately processed plaintiff's requests under FOIA. It withheld all the responsive documents it located pursuant Exemptions 3, 5, 6, and 7(C). Decl. ¶ 37; Defs.' Mot. 10–26; Second Vaugh Index (identifying fifty-one entries including Title III requests, action memoranda, law enforcement affidavits, proposed court orders, applications, and documents approving the requests to seek a Title III order).

An agency bears the burden of proving that a FOIA exemption applies to documents it has withheld. 5 U.S.C § 552(a)(4)(B); *Natural Res. Def. Council, Inc. v. Nuclear Regulatory Comm'n*,

216 F.3d 1180, 1190 (D.C. Cir. 2000) ("FOIA itself places the burden on the agency to sustain the lawfulness of specific withholdings in litigation.").

1. **Exemption 3**

FOIA Exemption 3 exempts from disclosure any materials that are specifically exempted from disclosure by another federal statute. 5 U.S.C. § 552(b)(3). Defendants maintain that Exemption 3 applies to twenty-three of the responsive records in this case, *see* Second Vaughn Index, because section 2518(8)(b) of Title III restricts the disclosure of documents concerning the authorization of wiretapping, including Title III applications, the supporting law enforcement agents' affidavits, proposed court orders, and authorization memoranda from the Assistant Attorney General ("AAG") for the Criminal Division. 18 U.S.C. § 2518(8)(b) ("Applications made and orders granted under this chapter shall be sealed by the judge. . . . Such applications and orders shall be disclosed only upon a showing of good cause before a judge of competent jurisdiction . . . ."); *Sinito v. U.S. Dep't of Justice*, Civ. A. No. 87-0814 (TFH), 2000 WL 36691372, at *6 (D.D.C. July 12, 2000), *aff'd in part sub nom. Sinito v. Dep't of Justice*, 22 F. App'x 1 (D.C. Cir. 2001) (holding that the FBI properly withheld Title III applications and affidavits pursuant to Exemption 3); *Mendoza v. DEA*, 465 F.Supp.2d 5, 11 (D.D.C. 2006) (criminal defendant not entitled to information obtained by wiretap under Exemption 3); *Butler v. U.S. Dep't of Justice*, Civ. A. No. 86-2255 (HHG), 1994 WL 55621, *7–*9 (D.D.C. Feb. 3, 1994) (affidavits submitted to obtain a wiretap are exempt under Exemption 3).

The exemption does not apply if information obtained pursuant to a Title III order has been made publicly available. *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1279–81 (D.C. Cir. 1992); *Cottone v. Reno*, 193 F.3d 550, 554 (D.C. Cir. 1999) ("Under our public-domain doctrine, materials normally immunized from disclosure under FOIA lose their protective cloak once

disclosed and preserved in a permanent public record."). Plaintiff attached the excerpt of a detention hearing transcript to his original complaint, Ex. A to Compl. [Dkt. # 1-2], and multiple excerpts of transcripts from his trial, Ex. B to Am. Compl., and he took the position in his appeal to OIP that all of the requested documents had already been publicly disclosed. *See, e.g.*, Exs. E & H to Am. Compl. [Dkt. # 47-1].

But to show prior public disclosure under this Circuit's public-domain doctrine, a plaintiff must "point[] to specific information in the public domain that appears to duplicate that being withheld." *Davis*, 968 F.2d at 1279 (internal quotes omitted). In this case, while plaintiff has submitted exhibits showing that portions of certain intercepted communications were played for the jury at his trial,[3] those communications are not the same information that is being withheld: the records of the requests to apply for Title III warrants and the agency's internal memoranda concerning the approval of those requests. Accordingly, the records he requests from the Criminal Division are not in the public domain and are protected from disclosure pursuant to 18 U.S.C. § 2518(8)(b).

    **2.**     **Exemption 5**

Exemption 5 permits agencies to withhold "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5); *Dep't of Interior & Bureau of Indian Affairs v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001). A document may be properly withheld under the exemption if (1) its source is a government agency, and (2) it falls "within the ambit of a privilege

---

3     This ruling does not opine on whether this or any other information that may be responsive to plaintiff's FOIA requests in the possession of other components of the Department of Justice or agencies of the federal government is in the public domain.

against discovery under judicial standards that would govern litigation against the agency that holds it." *Klamath Water Users*, 532 U.S. at 8. The exemption encompasses "protections traditionally afforded certain documents pursuant to evidentiary privileges in the civil discovery context," including the attorney-client privilege, the attorney work-product privilege, and the executive deliberative process privilege. *Taxation with Representation Fund v. IRS*, 646 F.2d 666, 676 (D.C. Cir. 1981).

Attorney work product encompasses material "prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative," including the other party's attorney. *Judicial Watch, Inc. v. Dep't of Justice*, 432 F.3d 366, 369 (D.C. Cir. 2005), quoting Fed. R. Civ. P. 26(b)(3). "[T]he Supreme Court has made clear [that] the [work product] doctrine should be interpreted broadly and held largely inviolate . . . ." *Id.*, quoting *Hickman v. Taylor*, 329 U.S. 495, 510–11 (1947).

Defendants withhold the following documents as attorney work product: 1) the prosecutors' requests to apply for court-authorization to intercept wire communications, including applications, law enforcement agent affidavits, and proposed court orders; 2) logging notes in the Title III system indicating receipt of such requests with respect to specific telephone numbers; 3) emails from ESU personnel to prosecutors acknowledging receipt of the requests; 4) email messages between the prosecutors and the ESU attorney reviewing the requests concerning the ESU review process, edits, revisions, and other aspects of the request; 5) action memoranda from OEO to the AAG recommending approval of the requests; 6) memoranda from the AAG to OEO approving the request; and 7) letters signed by Deputy AAGs on behalf of the AAG to the prosecutors advising that the AAG had approved the request to apply for a Title III order. Decl.

¶¶ 45–47; Defs.' Mem. at 16; Second Vaughn Index. Defendants assert that this list encompasses all of the documents plaintiff seeks in this lawsuit. Defs.' Mem. at 16.[4]

The Court finds that each of these documents was prepared by attorneys working for the government, or someone working at the direction of such an attorney, for the purpose of obtaining a wiretap in anticipation of litigation – namely, the criminal prosecution of the plaintiff in this case. Accordingly, they are covered by the work product privilege and fall under Exemption 5. *See, e.g.*, *Wolfson v. United States*, 672 F. Supp. 2d 20, 30 (D.D.C. 2009) (memoranda prepared by Division attorneys recommending that authorization be granted to apply for order for continued wiretaps and additional information establishing probable cause for the wiretaps properly withheld as attorney work product because they were prepared in anticipation of a criminal prosecution); *Thompson v. U.S. Dep't of Justice, Criminal Div.*, 146 F. Supp. 3d 72, 85 (D.D.C. 2015) (finding that Title III request documents submitted to the Division "are classic attorney work product, the disclosure of which would risk putting DOJ lawyers' thought processes and strategy on public display"). Given that these documents were prepared in anticipation of litigation, and absent any

---

4      The original complaint made clear that plaintiff's First FOIA Request was only for "the Title Ill authorization memoranda and all other documents from this agency that were a part of the approval process" for the wiretaps of the two identified phone numbers. Compl. at 2. But the Second FOIA Request was broader. *See* Second FOIA Request (seeking "a copy of *all* files and records relating to the activities of" plaintiff and the 7751 phone number) (emphasis added). To the extent the second request sought other records related to plaintiff's prosecution not in the possession of the Criminal Division, the Division directed the request to the Executive Office for United States Attorneys, which is responsible for responding to FOIA requests involving prosecutions by a United States Attorney's Office. Decl. ¶ 30. And the Court's order of July 11, 2018 made clear that the amended complaint would apply only to the Criminal Division and the OIP. Minute Order of July 11, 2018.

evidence to the contrary, the Court finds that defendants have properly invoked the attorney work product doctrine under Exemption 5.[5]

### 3. Exemptions 7(C) and 6

The Division also withholds personal information contained in responsive records on personal privacy grounds pursuant to FOIA Exemptions 7(C) and 6. Exemption 7(C) applies to "records or information compiled for law enforcement purposes . . . to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). For records to fall within this exemption, the agency must first demonstrate that the documents were compiled for law enforcement purposes. *Id.; see Keys v. U.S. Dep't of Justice*, 830 F.2d 337, 342 (D.C. Cir. 1987) (holding that information compiled for a federally authorized law enforcement purpose falls under the exemption), citing *Bevis,* 801 F.2d at 1388. Investigations for leads to possible violations of federal laws are deemed to be "for law enforcement purposes" within the meaning of the exemption. 830 F.2d at 342.

---

5    Defendants also withhold a subset of these documents – law enforcement agent affidavits, action memoranda from OEO to the AAG recommending approval of the Title III requests, and emails between the prosecutor and the reviewing ESU attorney about the request – pursuant to the deliberative process privilege. Decl. ¶¶ 48–50. The deliberative process privilege "covers documents reflecting advisory opinions, recommendations and deliberations comprising a part of a process by which governmental decisions and policies are formulated." *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 20 F. Supp. 3d 260, 268 (D.D.C. 2014), quoting *Klamath Water Users*, 532 U.S. at 8 (2001). To be covered by the privilege, records must be "both predecisional and deliberative." *Wolfe v. Dep't of Health and Human Servs.*, 839 F.2d 768, 774 (D.C. Cir. 1988) (en banc). Because these documents were created before the ESU decided to recommend approving the prosecutors' requests, were part of the decision-making process reflecting the analysis, recommendations, opinions, and deliberations in making the decision, and were submitted to the decision-maker as part of the Division's review process, the Court finds that these documents are also protected from disclosure pursuant to the deliberative process privilege and properly withheld under Exemption 5.

Exemption 6 applies to "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy. 5 U.S.C. § 552(b)(6). The phrase "similar files" within the exemption "include[s] all information that applies to a particular individual." *Lepelletier v. FDIC*, 164 F.3d 37, 46 (D.C. Cir. 1999), *citing U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 602 (1982) (holding the exemption "cover[s] detailed Government records on an individual which can be identified as applying to that individual").

In applying each of these exemptions, courts must balance the privacy concerns and the public interest in the determining whether the exemption applies. *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 762 (1989); *U.S. Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 495 (1994). "[E]even a modest privacy interest, outweighs nothing every time." *Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989).

Pursuant to these exemptions, the Division withholds information found in the Title III requests, including applications, agent affidavits, and proposed court orders; the Title III system logging notes; emails between the ESU reviewing attorney and prosecutors; action memoranda recommending approval of the requests; approval memoranda from the AAG; and approval letters signed by Deputy AAGs. Decl. ¶¶ 51–56. The withheld information includes the names, phone and fax numbers, and email addresses of the prosecutors making the requests; the names of the FBI agents involved in the investigation and of the reviewing ESU attorney; the user name of the OEO employee who created logging notes in the system; the names and addresses of the subscribers of the telephone service being intercepted; the names of the subjects of the investigation; the crimes the subjects were allegedly committing; the names of the individuals

whose conversations had already been intercepted; and incriminating excerpts of those conversations. Decl. ¶¶ 45, 51.

Defendants maintain that releasing this information would result an unwarranted invasion of personal privacy. Law enforcement personnel have a strong privacy interest in avoiding disclosure of their personal information in this matter. Decl. ¶¶ 52–55; *see Moore v. Bush*, 601 F. Supp. 2d 6, 14 (D.D.C. 2009) ("Generally, government employees and officials, especially law enforcement personnel, have a privacy interest in protecting their identities because disclosure 'could subject them to embarrassment and harassment in the conduct of their official duties and personal affairs.'"), *quoting Halpern v. FBI*, 181 F.3d 279, 296–97 (2d Cir. 1999). And investigation targets, subjects, and witnesses have a privacy interest in not being unfairly associated publicly with criminal activity. Decl. ¶¶ 52–55; *Lewis-Bey v. U.S. Dep't of Justice*, 595 F. Supp. 2d 120, 134 (D.D.C. 2009) (holding that private individuals identified in law enforcement files have a "strong interest in not being associated unwarrantedly with alleged criminal activity"), citing *Stern v. FBI*, 737 F.2d 84, 91–92 (D.C. Cir. 1984).

Defendants aver that disclosure would not serve the public interest since it would not add to the public's understanding of how the Division works or how well it performs its duties, Decl. ¶ 53, and plaintiff has presented no public interest that would warrant disclosing the information. Accordingly, the Court holds that the Division properly withheld this personal information under Exemptions 7(C ) and 6.

C. **Defendants Satisfied Their Segregation Obligations Under the FOIA**

While FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt" 5 U.S.C. § 552(b), "[a]ny part of [a document] prepared in anticipation of litigation, not just the

portions concerning legal opinions, legal theories, and the like, is protected by the work product doctrine and falls under Exemption 5." *Citizens for Responsibility and Ethics in Washington v. U.S. Dep't of Justice*, 48 F.Supp.3d 40, 51 (D.D.C. 2014), quoting *Tax Analysts v. IRS,* 117 F.3d 607, 620 (D.C. Cir. 1997). Because defendants properly withhold all of the responsive documents to plaintiff's requests on the basis of the attorney work product privilege, their entire contents are exempt from disclosure under the FOIA, and so defendants are not required to segregate any portions of the records for disclosure.

## CONCLUSION

For the reasons set forth above, the Court GRANTS defendant's motion for summary judgment [Dkt. # 54].

AMY BERMAN JACKSON
United States District Judge

DATE: September 27, 2019